UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| ENVIRO SHIELD PRODUCTS, INC., a South Dakota Corporation,<br><br>     Plaintiff,<br><br> vs.<br><br>SIR Q, LLC, a North Dakota Limited Liability Company, and BARRICADE ENVIRONMENTAL, LTD., a Delaware Corporation,<br><br>     Defendants. | CIV. 20-5041-JLV<br><br>ORDER |

**INTRODUCTION**

On August 17, 2020, plaintiff Enviro Shield Products, Inc., ("Enviro Shield") filed an amended complaint against defendants SIR Q, LLC, ("SIR Q") and Barricade Environmental, Ltd. ("Barricade").  (Docket 14).  The complaint alleges breach of contract, conversion, breach of a non-compete agreement and the destruction of plaintiff's property by the defendants and requests compensatory damages, punitive damages and attorney's fees.  See id. at pp. 4-7.  Enviro Shield asserts the court has jurisdiction over the case pursuant to 28 U.S.C. § 1332, based on the complete diversity of the parties and an amount in controversy greater than $75,000.  Id. at p. 1.

On September 29, 2020, defendant Barricade filed a motion to dismiss the amended complaint.  (Docket 21).  Barricade argues the court lacks

personal jurisdiction over it in this matter and, therefore, the amended complaint should be dismissed as to Barricade.  Id. at pp. 5-15.  Alternatively, should the court find it has personal jurisdiction over Barricade in this matter, Barricade argues the amended complaint should nevertheless be dismissed because it is an impermissible shotgun pleading and fails to state a claim upon which relief can be granted.  Id. at pp. 15-22.  Finally, if the court rejects Barricade's arguments, Barricade moves the court to issue an order requiring Enviro Shield to provide a more definite statement of its claims against Barricade.  Id. at pp. 22-23.  Barricade attached to its motion to dismiss two exhibits—declarations of Barricade's Chief Executive Officer, Robert Lloyd, and Chief Operating Officer, Danny Hudson.  (Dockets 21-1 & 21-2).

      On December 7, 2020, Enviro Shield filed a response to Barricade's motion to dismiss, along with an affidavit and multiple supporting exhibits.  (Dockets 26 & 27).  In its response, Enviro Shield resists Barricade's argument that the court lacks personal jurisdiction over Barricade.  See id. at pp. 4-8.  However, Enviro Shield does not address Barricade's arguments that the amended complaint amounts to an impermissible shotgun pleading and fails to state a claim upon which relief can be granted.  Barricade filed a reply on January 11, 2021, with a supporting affidavit and exhibit.  (Dockets 30 & 31).  The factual summary in the following section is drawn from the amended complaint and the parties' filings submitted on the motion to dismiss.

For the reasons given below, the court grants Barricade's motion to dismiss for lack of personal jurisdiction and dismisses Barricade as a defendant in the case. Because the court lacks personal jurisdiction over Barricade in this case, it is unnecessary to address and denies as moot Barricade's arguments that the amended complaint is an impermissible shotgun pleading and fails to state a claim upon which relief can be granted.

## FACTUAL BACKGROUND

This case arises out of a dispute concerning Enviro Shield's oil field environmental protection devices. See Docket 14 at p. 1. Enviro Shield is a South Dakota corporation engaged "in the business of manufacturing and renting oil field environment protection devices" to oil companies around the country for their use in clean-up activities. Id. Defendant SIR Q is a North Dakota corporation and does business in North Dakota, South Dakota and elsewhere. Id. Defendant Barricade is a Delaware corporation and conducts business in North Dakota. Id. Enviro Shield asserts Barricade also does business in South Dakota. Id. However, Enviro Shield provides no evidence to support that assertion, and Barricade adamantly denies it. See Docket 21 at p. 10; Docket 21-1 at pp. 3-4; Docket 21-2 at p. 3.

Enviro Shield rents environmental containment boxes to oil companies for their use in clean-up activities. In the spring of 2017, Enviro Shield and SIR Q entered into an agreement for SIR Q to pick up, or for Enviro Shield to deliver to SIR Q, Enviro Shield's used environmental containment boxes and

3

for SIR Q to clean the boxes and condition them for re-use so that Enviro Shield could rent them out again.  (Docket 14 at p. 2).  Enviro Shield suggests it contracted with SIR Q, specifically, at the urging of one of Enviro Shield's employees at the time, Danny Hudson.  See id.  There were discussions in June 2017 between Mr. Hudson and Enviro Shield's management for Mr. Hudson to purchase Enviro Shield.  See id.  However, Mr. Hudson did not ultimately purchase Enviro Shield and, in fact, resigned from the company in July 2017.  See id.

      Mr. Hudson subsequently began working for SIR Q.  See id. at p. 3.  Enviro Shield alleges Mr. Hudson shared Enviro Shield's customer information with his new employer in violation of a nondisclosure and noncompete agreement Mr. Hudson had with Enviro Shield.  See id.  Enviro Shield further alleges that, using the information provided by Mr. Hudson, SIR Q dishonored its cleaning contract with Enviro Shield and began to rent out Enviro Shield's containment boxes that were in its possession to Enviro Shield's customers at a lower price and for SIR Q's own benefit.  See id.  Some of the boxes, Enviro Shield claims, were also damaged while in SIR Q's possession or have since gone missing.  See id. at pp. 3-4.

      At some point, Enviro Shield alleges, some of its environmental containment boxes that had been in SIR Q's possession were transferred to Barricade's possession.  See id. at p. 4.  Mr. Hudson also became an employee of Barricade in October 2017.  See id.; see also Docket 21-2 at p. 1.  Enviro

4

Shield accuses Barricade of thereafter engaging in the same conduct, as orchestrated by Mr. Hudson, of soliciting Enviro Shield's clients and renting out Enviro Shield's boxes to those clients for Barricade's own benefit.  See Docket 14 at p. 4.  Enviro Shield does not allege that any of Barricade's alleged conduct in this regard occurred within South Dakota, nor does it supply any evidence that suggests it did.

    Barricade, through declarations of its Chief Executive Officer, Robert Lloyd, and Chief Operating Officer and shareholder, Danny Hudson, represents to the court that it is a Delaware corporation headquartered in Cheyenne, Wyoming.  See Docket 21-1 at p. 3.  Barricade maintains it "does not do business in South Dakota and has not engaged in any business with [Enviro Shield] in South Dakota." Id. at p. 4.  It "is not registered to conduct business in South Dakota," nor does it have any employees, staff, agents or representatives in South Dakota.  Id. at p. 3.  Barricade conducts most of its work in North Dakota and Wyoming.  Id.  Mr. Hudson "previously resided in South Dakota during portions of the period covered by the Amended Complaint, [but] he did not perform any work for Barricade in South Dakota." Id.  Mr. Hudson confirms that during the period covered in the amended complaint when he was residing in South Dakota and working for Barricade he "performed all duties and business" pertaining to his employment with Barricade primarily from Barricade's North Dakota office, or in states other than South Dakota.  (Docket 21-2 at p. 3).  He is personally "unaware of

5

Barricade conducting any business in South Dakota." Id.  Furthermore, Barricade represents it does not own, rent or lease any real property in South Dakota.  (Docket 21-1 at p. 3).  Nor does it maintain any bank accounts in South Dakota.  Id.

In response, Enviro Shield alleges Mr. Hudson's "tortious conduct: conversion, and theft of trademark secrets, and theft of [Enviro Shield's] proprietary interests . . . occurred in the State of South Dakota."  (Docket 26 at p. 5).  Mr. Hudson, who is not a party to this case, left his employment with Enviro Shield in July 2017, joined SIR Q shortly thereafter, and worked with SIR Q until he took a position with Barricade in October 2017.  Enviro Shield's position appears to be that Mr. Hudson's allegedly tortious conduct was continuous through that period, "is ongoing to this day," and can now be imputed to Barricade, thereby supplying the court with personal jurisdiction over Barricade.  Id. at p. 7.

## ANALYSIS

I.  **PERSONAL JURISDICTION**

A party may assert the defense of lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).  "When personal jurisdiction is challenged by a defendant, the plaintiff bears the burden to show that jurisdiction exists." Fastpath, Inc. v. Arbela Techs. Corp., 760 F.3d 816, 820 (8th Cir. 2014).  "To successfully survive a motion to dismiss challenging personal jurisdiction, a plaintiff must make a prima facie showing of personal jurisdiction over the

challenging defendant." Id.  That is "accomplished by pleading sufficient facts 'to support a reasonable inference that the defendant[] can be subjected to jurisdiction within the state.' " K-V Pharm. Co. v. J. Uriach & CIA, S.A., 648 F.3d 588, 591-92 (8th Cir. 2011).  "A plaintiff's prima facie showing must be tested, not by the pleadings alone, but by affidavits and exhibits supporting or opposing the motion." Fastpath, Inc., 760 F.3d at 820 (internal quotation omitted).  Where, as here, "no hearing is held on the motion," the district court views the "evidence in a light most favorable to the plaintiff and resolve[s] factual conflicts in the plaintiff's favor." Id.

"Federal courts apply the long-arm statute of the forum state to determine the existence of personal jurisdiction over the parties." Whaley v. Esebag, 946 F.3d 447, 451 (8th Cir. 2020).  The exercise of personal jurisdiction must also comport with the Due Process Clause. See Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG, 646 F.3d 589, 595 (8th Cir. 2011).  In this case, the forum state is South Dakota, and the South Dakota long-arm statute permits personal jurisdiction to be exercised to the full extent allowed by the Due Process Clause. See SDCL § 15-7-2(14).  Therefore, the court may exercise personal jurisdiction over Barricade if doing so would comport with federal due process—i.e., if Enviro Shield shows that "sufficient 'minimum contacts' exist" between Barricade and the State of South Dakota, "so that 'traditional notions of fair play and substantial justice' are not offended." Whaley, 946 F.3d at 451 (quoting Int'l Shoe Co. v. Washington, 326

U.S. 310, 316 (1945)).  This may be done by showing the existence of either of "two categories of personal jurisdiction"—general or specific.  Daimler AG v. Bauman, 571 U.S. 117, 126 (2014).  General jurisdiction "refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose."  Viasystems, Inc., 646 F.3d at 593 (internal quotations omitted).  "Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state."  Id. (internal quotations omitted).

The Eighth Circuit applies a five-factor test "to assess minimum contacts."  Whaley, 946 F.3d at 452.  The five factors are:

(1) the nature and quality of contacts with the forum state;

(2) the quantity of such contacts;

(3) the relation of the cause of action to the contacts;

(4) the interest of the forum state in providing a forum for its residents; and

(5) convenience of the parties.

Id.  The first three factors are of primary importance.  Id.  "The third factor applies only on the question of whether specific jurisdiction exists."  Downing v. Goldman Phipps, PLLC, 764 F.3d 906, 912 (8th Cir. 2014).  "The fourth and fifth factors 'carry less weight and are not dispositive.'"  Whaley, 946 F.3d at 452 (quoting Downing, 764 F.3d at 912).

The court addresses general jurisdiction and specific jurisdiction in turn.

8

## A. GENERAL JURISDICTION

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (internal quotation omitted). For a corporation, the paradigmatic—although not exclusive—forums where it can be "fairly regarded as at home" are its place of incorporation and principal place of business. Id. at 924; see also Daimler AG, 571 U.S. at 137.

Here, Barricade is neither incorporated in nor does it have its principal place of business in South Dakota. Barricade is incorporated in Delaware. It represents to the court that it does most of its business in North Dakota and Wyoming and is not even registered to do business in South Dakota. Although Enviro Shield alleges in its amended complaint that Barricade does business in South Dakota, it provides no factual evidence to support this conclusory statement, and the statement is directly refuted by information in the affidavits attached by Barricade to its motion to dismiss. The only additional connection Enviro Shield appears to identify between Barricade and South Dakota is Barricade's employment of Mr. Hudson, who previously resided in South Dakota during which time he left the employment of Enviro Shield, briefly worked for SIR Q and then joined Barricade. The quantity of contact between Barricade and South Dakota is so minimal as to be almost nonexistent. The

9

court finds Barricade does not have affiliations with South Dakota that are so continuous and systematic as to render Barricade at home in South Dakota. See Goodyear, 564 U.S. at 919.  Accordingly, the court does not have general jurisdiction over Barricade.

### B. SPECIFIC JURISDICTION

In analyzing specific jurisdiction, the court utilizes the five-factor test for assessing minimum contacts discussed above to consider "whether the defendant has purposely directed [its] activities at . . . the forum [state], and the litigation results from alleged injuries that arise out of or relate to those activities." Whaley, 946 F.3d at 451 (internal quotation omitted).

As stated above, Enviro Shield alleges Barricade conducts business in South Dakota, but has provided no factual evidence to support that allegation and, in fact, it is directly refuted by affidavits submitted by Barricade.  The only additional connection Enviro Shield identifies between Barricade and South Dakota is Barricade's employment of Mr. Hudson, who previously resided in the state, during which time he left the employment of Enviro Shield, briefly worked for SIR Q and then joined Barricade.  As to the second factor utilized to assess a party's minimum contacts with the forum state, as the court already stated, the quantity of Barricade's contact with South Dakota is so minimal as to be almost nonexistent.

Furthermore, as to the first factor, the nature and quality of the contact is, at best, attenuated.  Much of Mr. Hudson's allegedly tortious conduct

occurred, if at all, before Mr. Hudson was formally employed by Barricade in October 2017.  This is certainly true for any of Mr. Hudson's conduct which the court could reasonably glean from the facts provided by the parties actually occurred in the State of South Dakota.  If Barricade has wrongfully come into the possession of any of Enviro Shield's environmental containment boxes, it appears to the court—and Enviro Shield has failed to provide facts showing otherwise—that those boxes were transferred from SIR Q's possession in North Dakota to Barricade's possession in North Dakota.  If Barricade has wrongfully come into the possession of Enviro Shield's proprietary information through Mr. Hudson during his employment with Barricade, that information, while it may have originated from Enviro Shield in South Dakota and Mr. Hudson may have initially acquired it while he personally resided in South Dakota or was employed by Enviro Shield in South Dakota, was transferred from Mr. Hudson to Barricade during the course of Mr. Hudson's work for Barricade which has occurred primarily in North Dakota and entirely outside of South Dakota.  The contacts with South Dakota relevant to the claims in the amended complaint are perhaps more accurately characterized as Mr. Hudson's contacts with the state, not Barricade's.

     As to the third factor—the relation of the causes of action to the contacts—while it is true that Mr. Hudson's allegedly tortious conduct, if it occurred at all, began during the time he resided in South Dakota, much of that conduct would have occurred prior to his employment with Barricade.  To

the extent Mr. Hudson's tortious conduct continued during his employment with Barricade, giving rise to the claims Enviro Shield makes against Barricade in the amended complaint, such conduct by Mr. Hudson occurred, again, primarily in North Dakota and entirely outside of South Dakota.  The relation of the causes of action against Barricade to Barricade's attenuated contacts with South Dakota is, therefore, negligible.

In sum, the first three factors weigh heavily against the court's exercise of specific jurisdiction over Barricade.  Because those factors are the ones of primary importance, and the fourth and fifth factors carry less weight and are not dispositive, it is unnecessary to address the fourth and fifth factors.  See Whaley, 946 F.3d at 452.  There is no basis for finding Barricade purposely directed its activities at South Dakota and this litigation arises from such activities and, therefore, that sufficient minimum contacts exist between Barricade and South Dakota for the court to exercise specific jurisdiction over Barricade here.

The court does not have personal jurisdiction over Barricade.

## ORDER

Based on the above analysis, it is

ORDERED that defendant Barricade's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) (Docket 21) is granted.

IT IS FURTHER ORDERED that the remainder of defendant Barricade's motion (Docket 21) is denied as moot.

IT IS FURTHER ORDERED that Barricade Environmental, Ltd., is dismissed as a defendant.

Dated September 23, 2021.

                                        BY THE COURT:

                                        /s/ *Jeffrey L. Viken*
                                        JEFFREY L. VIKEN
                                        UNITED STATES DISTRICT JUDGE